IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JUL 15 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel. )
)
Randy Walker, Register No. N–54451, )
)
    Petitioner, ) CASE NO: 08 C 3052
) Judge James. B. Zagel
    vs. )
)
Yolande Johnson, Warden ) Case Number of State Conviction:
Vienna Correctional Center ) 96 CR 25404
)
    Respondent. )

**RESPONSE TO ORDER TO SHOW CAUSE**

    Walker did not file his petition for habeas corpus within the one-year deadline for doing so because of his severe mental illness. Walker asks that this Court apply the doctrine of equitable tolling and find that his petition was timely filed. The court may toll the limitations period under the doctrine of equitable tolling if petitioner can establish that some extraordinary circumstance beyond his control stood in the way of timely filing, and he has been pursuing his rights diligently. *Pace v. DiGuglielmo*, 544 U.S. 408, 419, n. 8 (2005).

    Mental illness tolls a statute of limitations if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them. *United States ex rel. Sowewimo v. Hensley*, 2005 WL 1498856 (N.D.Ill. June 8, 2005) (emphasis in original), citing *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996). To overcome the statute of limitations barrier, petitioner must show that he was incapable of preparing and filing a habeas

1

petition while the limitations period was in effect. *Id.* at *2, citing *United States ex rel. Kennedy v. Page*, 1999 WL 1044829, *2 (N.D.Ill. Nov.16, 1999).

Walker has met this burden, because an examination of the record reveals that he was, during the relevant time period, suffering from the effects of schizoaffective disorder, which deprived him of the ability to understand his legal rights and file a timely habeas petition. In August of 1999, the same month his conviction and sentence were affirmed on direct appeal, Walker requested a transfer to the psychiatric unit at Dixon. (Supp. C. 135) According to a report prepared by Dixon psychiatric personnel, Walker complained that everyone at Dixon was "left minded" and that prison officials administer medication to make him and everyone else "left minded." (Supp. C. 135) Walker also stated that he may kill someone. The psychiatrist subsequently recommended that Walker be admitted as an emergency patient because of possible "underlying paranoid psychosis." (Supp. C. 135) While at Dixon, Walker continued to refuse recommended psychotropic medications. (Supp C. 137) He also informed the intake psychiatrist (falsely) that he had no history of psychiatric treatment and no prior contact with psychiatrists. (Supp. C. 138) A staff psychiatrist noted that Walker had "questionable delusions" and continued to monitor him for a possible psychotic disorder. (Supp. C. 139) An evaluation dated September 13, 1999, describes Walker as "somewhat paranoid as well as delusional" and stated that his condition "may decompensate into more significant psychoses." (Supp. C. 137)

At some point, Walker apparently returned to the general population, but was once again sent to the Dixon psychiatric unit for treatment in 2001. Records from Dixon indicate that Walker had been writing bizarre, unintelligible letters to the Stateville warden, "reflecting [] grossly disorganized thought processes." Walker again (falsely) denied any history of psychiatric

2

treatment. The examining psychiatrist diagnosed Walker with psychotic disorder. (Supp. C. 118) In November of 2001, Walker was placed on a "crisis watch" stemming from unspecified "agitated behavior." (Supp. C. 120) He was noted to be delusional and hostile, and continued to refuse to take psychotropic medications. The staff psychiatrist diagnosed Walker with schizoaffective disorder. (Supp. C. 120) Although Walker requested a transfer out of the psychiatric unit, the psychiatrists refused his request. (Supp. C. 133)

In June of 2002, Walker finally agreed to take medication for his condition. (Supp. C. 126) He was prescribed Risperdal, an antipsychotic used for the treatment of schizophrenia. (Supp. C. 126) Walker showed improvement during the months he was on medication, but elected to stop taking the Risperdal in October of 2002. (Supp. C. 123) Soon thereafter, in January of 2003, Walker reported having some problems with "voices," but stated that he could handle them without medication. (Supp. C. 169, 166) Walker's schizoaffective disorder was eventually characterized as having gone into remission, and the remaining medical records (up to October 2004), reflect no further psychotic episodes. (Supp. C. 143-65) Walker filed his *pro se* post-conviction petition on September 23, 2003. (C. 13)

As the above indicates, Walker was confined to the Dixon psychiatric unit at the time his direct appeal was decided. He was also, by turns, delusional and psychotic during significant periods of time immediately preceding the time period when the statute of limitations began to run and for periods of time in 2001 and 2002. Consistent with his prior history, Walker was described in September 1999 as "somewhat paranoid as well as delusional" and the treating psychiatrist felt that Walker's mental state was in danger of degenerating "into more significant psychoses." (Supp. C. 137) The psychiatrist continued to monitor Walker for possible psychotic

or delusional disorder. (Supp. C. 137) The psychiatrist's prediction was accurate, for, in 2001, Walker was recommitted to the psychiatric unit and diagnosed with psychotic disorder. In November of 2001, Walker was placed on a "crisis watch," (Supp. C. 120) was noted to be delusional and hostile, and refused to take psychotropic medications. This time, the staff psychiatrist diagnosed Walker with schizoaffective disorder, and did not permit Walker to transfer out of the psychiatric unit. (Supp. C. 120, 133) Walker's serious, undisputed mental illness, which required treatment in the psychiatric unit in late 1999, 2001 and 2002, prevented Walker from understanding his rights and filing a timely habeas corpus petition.

This conclusion is supported by a report from psychologist Dr. Keenan Farrell, documenting precisely how Walker's mental illness impacted his ability to understand his legal rights and abide by deadlines. According to the report, prepared in 2005, Walker suffers from paranoid schizophrenia and has an "extremely low" I.Q. (Supp. C. 4, 65) In Farrell's opinion, Walker's mental illness is characterized by severe paranoia, hearing of voices, and exercise of "extremely bad judgment," which, combined with deficient legal counsel, explain Walker's failure to timely file a post-conviction petition. (Supp. C. 4-5) Although Farrell's report was submitted in support of Walker's claim that he was not culpably negligent in filing a late post-conviction petition, there is no logical reason why Dr. Farrell's conclusions should not apply with equal force here. Dr. Farrell stated that mental illness was one of the reasons why Walker's post-conviction petition was untimely filed. In Farrell's opinion, Walker was likely erroneously found fit to stand trial because relevant information concerning Walker's "multitudinous and lengthy treatments for [] well-documented, severe mental illness" was not presented to the trial court. (Supp. C. 4) These facts, in Farrell's opinion, "tend to show ...why Mr. Walker's petition was

4

filed late, and the totality of these factors do not show that Mr. Walker was "negligent" or "culpably negligent" in filing a late petition, as I understand those terms to mean." (Supp. C. 5) Although applying a different standard, Dr. Farrell's observations are nonetheless germane to the question of whether Walker was actually unable to file a timely habeas petition.

Further, Walker did not become aware of the factual predicate for his claim until appointed counsel filed an amended post-conviction petition on his behalf in 2004. 28 U.S.C. § 2244(d)(1)(D). Counsel gathered hundreds of pages of medical records documenting Walker's history of mental illness. It was at the post-conviction stage that Walker first presented his claims regarding his lack of fitness, with proper documentary support. It would be anomalous to require a petitioner such as Walker, who is asserting a due process violation based on unfitness, and whose trial and appellate attorneys ignored his glaring mental illness, to comprehend and timely act upon the deadline for filing a habeas petition. An unfit person does not realize that he is unfit. As such, Walker, whose words and actions evince a *bona fide* doubt of his fitness to stand trial and be sentenced, cannot be expected to adhere to the filing deadlines, particularly where the documentary support for his claim was gathered and presented only after appointment of counsel in connection with his state post-conviction proceeding, in 2004. There is no indication that Walker was actually aware of the basis for a fitness claim; to the contrary, he continually denied having a history of mental illness. (Supp. C. 118, 138) Significantly, once Walker's symptoms subsided, he promptly filed a post-conviction petition in September of 2003. (C. 13) The record thus supports the inference that it was debilitating mental illness that prevented him from discovering the factual basis for his claim and prevented him from presenting his legal claims in a timely fashion. The prompt filing of the post-conviction petition

also establishes that Walker, once fit, diligently pursued his rights. *Pace v. DeGeglielmo*, 544 U.S. 408, 418 (2005).

Finally, between June and September of 2002, Walker took Risperdal, an antipsychotic used in the treatment of schizophrenia. (Supp. C. 123, 126); www.drugs.com/risperdal.html. Both the Illinois and the United States Supreme Courts have observed that anti-psychotic drugs may have severe side effects which could impair a defendant's ability to rationally assist in his defense. *Riggins v. Nevada*, 504 U.S. 127, 137 (1992). Although these observations were made in the context of a defendant's ability to participate in his own defense, there is no reason why consumption of antipsychotic drugs would not have a similarly deleterious effect on one's ability to timely file a petition for habeas corpus. In any case, the issue cannot be resolved without an evidentiary hearing.

Courts have held that when a habeas petitioner's mental competency is at issue and the record discloses a genuine basis for concern, it is appropriate to toll AEDPA's time bar until a reasonable period after the district court makes a competency determination. *See Ledin v. Carlson*, 2004 WL 483197 (D. Minn. 2004). The petitioner must allege more than the "mere existence of physical or mental ailments to invoke the equitable tolling of AEDPA's statute of limitations." *Rhodes v. Sekowski*, 82 F. Supp.2d 160, 173 (S.D.N.Y.2000). Randy Walker has met the burden to demonstrate why he was unable to comply with the one-year statute of limitations. Alternatively, he has presented sufficient evidence of his mental illness and its effects on his functioning to require an evidentiary hearing on the issue. Walker is not relying on mere conclusory allegations – his repeated admissions to the Dixon psychiatric unit and documented incidents of bizarre behavior, delusions and paranoia, leading to a diagnosis of

schizoaffective disorder, occurred immediately after his conviction became final, immediately prior to the time the statute of limitations began to run.

For the foregoing reasons, this Court should hold that the petition is timely filed, and should docket the petition for further proceedings. In the alternative, this Court should order an evidentiary hearing to determine if application of equitable tolling is warranted.

**I declare under penalty of perjury that the foregoing is true and correct.**

Respectfully submitted,

*/s/ Randy Walker*

Randy Walker
Register No. N-54451
Vienna Correctional Center
P.O. Box 200
Vienna, IL 62995